## MARIA GORSE v. JOHN GOUZE AND ANOTHER.[1]

November 22, 1918.

No. 20,948.

**Intoxicating liquor.**

Action to recover for death of plaintiff's husband, alleged to have been caused by the use of intoxicating liquor unlawfully furnished to the deceased by defendant. *Held* that the trial court properly directed a verdict for defendant at the close of plaintiff's case, upon the ground of failure of proof of an unlawful furnishing of liquor.

Action in the district court for St. Louis county against John Gouze and the Aetna Accident & Liability Company to recover $7,500 for the death of plaintiff's husband. In his separate answer defendant Gouze expressly denied that either at the time or times mentioned in the complaint or at any other time he unlawfully sold or furnished to deceased any intoxicating liquors. The same denial was made in the separate answer of the defendant corporation. The case was tried before Freeman, J., who when plaintiff rested granted defendant's motion for a directed verdict on the ground that the evidence did not show facts which

[1]Reported in 169 N. W. 423.
141 M.—7.

constituted a cause of action. From an order denying her motion for a new trial, plaintiff appealed. Affirmed.

*A. J. Thomas* and *John Jenswold,* for appellant.

*Abbott, MacPherran & Gilbert,* for respondents.

QUINN, J.

Action by Maria Gorse to recover for the death of her husband, John Gorse, alleged to have been caused by the use of intoxicating liquor unlawfully sold and furnished to him by the defendant on November 1, 1916. At the close of plaintiff's case the court, upon motion of the defendant, directed the jury to return a verdict in favor of the defendant, upon the theory that the testimony failed to show that the defendant unlawfully sold and furnished intoxicating liquor to plaintiff's husband. From an order denying her motion for a new trial, plaintiff appealed.

The defendant Gouze was a licensed saloonkeeper in the city of Ely, St. Louis county. The plaintiff's husband was a miner by occupation. He resided with his family a few blocks from defendant's place of business. But three witnesses were examined upon the trial. They were Dr. Sullivan, the defendant, upon cross-examination under the statute, and the plaintiff.

Dr. Sullivan testified that he examined the plaintiff's husband on the morning following his injury; that he was then unconscious, in a state of coma, and one side paralyzed; that after his death they performed an autopsy and found both plates of the skull fractured clear through, which was the immediate cause of his death. Upon cross-examination the defendant testified, in effect, that between 9 and 10 o'clock in the forenoon on November 1, 1916, the plaintiff's husband came to his saloon to pay $105 which he owed him for two pigs and some borrowed money; that while he was there Frank Orazen, Frank Hren and John Potboy came into the place; that some time thereafter Orazen offered to treat those present to something to drink; that Gorse said he would take beer, as did two of the others; that a small bottle of beer was set out for Gorse, but that there were not bottles enough at the bar for all; that at that time his wife passed through the room on her way to the basement to get some vegetables for dinner; that he asked her to bring up some small bottles of beer; that Gorse had not drunk his beer, but spoke up and said

he would go and get some bottles from the basement; that he then followed Mrs. Gouze into the basement; that Mrs. Gouze returned shortly with her vegetables, Gorse following her without any bottles; that he immediately turned and went back into the basement; that shortly thereafter a loud noise came from the basement like the falling of a case of bottles; that Orazen went to learn the trouble and found Gorse lying on the cement floor; that he so informed defendant, and then Orazen and Hren assisted Gorse up the stairs and placed him in a chair in the back room; that defendant then telephoned for a doctor, and that at about 11 o'clock they carried Gorse upstairs to defendant's living rooms and placed him on a bed; that he then informed Gorse that he had 'phoned for a doctor, and that Gorse said: "Don't do that. Let me rest a little bit and I will go home then;" that later he ordered an automobile and Gorse was taken home; that his teamster, John Sego, accompanied him; that Gorse was perfectly sober when he came to defendant's place; and that he drank nothing there; that he had not kept champagne in his place for a long time.

The plaintiff testified, in effect, that her husband left home on the day in question between 9 and 10 o'clock; that she next saw him at about half past two in the afternoon; that John Sego and a chauffeur brought him home; that she asked Sego "what is the matter with him and he said: 'He is drunk.'" This statement was stricken from the record by the court. Plaintiff also testified that Sego and the chauffeur then carried her husband into the house and put him on the bed; that she tried to talk with him but he gave no answer; that she left him lying there until 6 o'clock the next morning when she heard that he fell in the basement; that she then called a doctor who examined him and said he would not "come to any more;" that she then went to defendant's place of business and inquired what had happened to her husband; that defendant said that they were drinking a little whiskey and beer; that her husband went into the basement and fell down; that Mrs. Gouze said he had two bottles of champagne, and that they said he was drunk.

Before the plaintiff is entitled to recover in this case, she must show by competent proof that the defendant Gouze unlawfully furnished her husband intoxicating liquor, and that the same was the proximate cause of the injuries which resulted in his death. We have been unable to find

such evidence in the record. The testimony of the plaintiff as to what the defendant and his wife said to her is not sufficient proof. The jury was entitled to more. Deceased was not an intemperate person, as appears from the testimony. Three men other than the defendant were present when deceased went into the basement, saw him and heard him talk. None were called to testify. Two other men took him home, carried him into the house and placed him on his bed. Neither was called to testify. The testimony is silent as to whether there was an odor of liquor about his person at the time. There is no direct testimony that the deceased drank any liquor or that he was intoxicated on the day of his injury. The plaintiff testified that when her husband left home on the day in question he had $150 with him, and that when he was brought back he had but $25. He paid the defendant $105. What became of the other $20 does not appear, but its absence alone cannot be said to prove that the defendant received it or that he unlawfully furnished liquor to deceased. The plaintiff also testified that in the defendant's presence his wife stated that the deceased had two bottles of champagne. Defendant testified that he had not kept champagne in his place for a long time. Such statement cannot be said to amount to proof of an unlawful furnishing of liquor to deceased. We think there was a total lack of proof and that a verdict was properly directed.

Affirmed.