Mildred JOHANSON, Plaintiff
and Appellant,

v.

NASH FINCH COMPANY, a corporation, do-
ing business as Piggly Wiggly Store,
Defendant and Appellee.

Civ. No. 8914.

Supreme Court of North Dakota.

March 27, 1974.

See also, N.D., 212 N.W.2d 372.

David Kessler, Grand Forks, for plaintiff and appellant.

Conmy, Rosenberg & Lucas, Bismarck, for defendant and appellee.

VOGEL, Justice.

The plaintiff appeals from a jury verdict in favor of the defendant, in an action in which she sued for severe personal injuries resulting from a fall at the entrance to the defendant's grocery·store in Grand Forks, North Dakota, on a stormy·January afternoon in 1969.

The plaintiff fell as she was entering the defendant's store. The store had two doors, side by side, one for entry and the other for exit. These two doors were set back about three feet from the front of the store, making a three-sided entryway, with the fourth side uninclosed and joining the public sidewalk, leaving the entire entryway open to the weather. There is testimony that the floor of the entryway rose slightly from the sidewalk to the doors and there is testimony that the concrete surface of the entryway was, and also testimony that it was not, smoother than the sidewalk. The sidewalk had settled somewhat on the inner side adjoining the building so that it sloped toward the building. Someone had in years past put a drain pipe covered with a round grating in front of the entryway, presumably to drain off water accumulated by the slanting sidewalk and slanting entryway surface. The drain conducted water into the basement of the store building and eventually into the city sewer system.

On January 14, the temperature in Grand Forks ranged from 15 to 28 degrees with a 22-mile-per-hour wind. Freezing rain fell in the evening. On January 15, the day of the plaintiff's accident, the temperature gradually rose from 28 degrees at 7 a. m. to 29 degrees at noon and 30 degrees at 7 p. m. Snow fell all day and the wind was 8 miles per hour. One weather station in the vicinity reported 2½ inches of snow that day and another reported 5 inches. There was freezing rain, fog, drizzle, snow, and wind.

At about 2:30 p. m., the plaintiff, wearing snowboots with corrugated flat soles, stepped out of a car driven by her son in the parking lot of the defendant, walked along a private sidewalk in the parking lot beside the store building, then turned onto the public sidewalk in front of the building, and, while entering the store, fell and fractured her hip. She did not touch the door either before she slipped or after, but instead fell in the entryway when her feet flew out from under her.

The defendant's manager testified that the sidewalk and entryway had been cleared of snow before the store opened that morning and once at about noon, and that there was no ice at either time. The defendant had, on other occasions, used salt to dispose of accumulated ice, but did not do so on the day in question, maintaining that there was no need for applying salt. Nor did it apply sand, matting, or any corrugated material at the entryway.

The plaintiff produced an expert witness, the chairman of the Department of Civil Engineering at the University of North Dakota, who testified without objection that it was good practice and customary for public buildings to have a double set of doors, thereby providing an inclosed entryway, so as to maintain clean, dry air conditions for entry. He also testified that the opposing slants of the sidewalk and the entryway would tend to create ponding and that a floor drain at an entryway is an extremely unusual situation. He said that the opening and closing of the doors to the store caused warm air to gush out, which tends to melt snow that may be deposited

at the entry. He further testified that at temperatures of 27 to 30 degrees the heat from the store would cause snow in the entryway to become slushy and wetted. The plaintiff claims the entryway was slippery, causing her to fall. The defendant claims it was not.

It was the plaintiff's contention that the defendant had failed in its duty to provide a reasonably safe place for its business invitees to enter its store. The defendant denied negligence and asserted that the plaintiff was contributorily negligent and had assumed the risk of injury.

There is a dispute as to whether the place of her fall was covered only with a normal accumulation of snow, due to natural weather conditions, or whether some act of the defendant had increased any risk that might exist because of the natural snowfall.

In Clark v. Stoudt, 73 N.D. 165, 12 N. W.2d 708, 711 (1944), we said:

> "If the abutting owner discharged water or snow upon the sidewalk or permitted it to drip from his roof onto the sidewalk, we would have a different situation, but where the accumulation comes from natural causes the primary duty is upon the municipality which may by ordinance call upon the owners to assist it in the discharge of its municipal duties.
>
> . . . . . . .
>
> "We need not discuss the question of whether the city, even under a statute, could impose upon the occupants of adjoining places the duty of removing the accumulations of snow and ice in front of their premises so as to impose personal liability on individuals. The ordinance here imposes no such liability."

Since the ordinances of the City of Grand Forks were not offered in evidence, we presume that they do not attempt to impose individual liability for injuries on public sidewalks.

In Strandness v. Montgomery Ward, 199 N.W.2d 690, 691 (N.D.1972), after stating the rule from Clark v. Stoudt, we said that:

> "An exception to the general rule is that the abutting property owner or occupant who constructs or maintains upon his property a canopy in such a manner as to cause an artificial discharge and accumulation of water upon the sidewalk, which, when frozen, makes the use of the sidewalk dangerous, will be held liable to one who, being rightfully upon the sidewalk, is injured in consequence of such dangerous condition." [Citations omitted.]

Plaintiff's complaint here alleges that the defendant breached its duty of ordinary care to the plaintiff by allowing ice and snow to accumulate in front of the entryway to its store, thereby creating a slippery and hazardous condition, and in failing to provide a sheltered entryway to its building. As we stated, her theory of the case was that she fell in the entryway, which the defendant negligently allowed to be in a dangerous condition. By analogy to *Strandness, supra,* she maintains that the defendant had a duty to provide a safe entryway in times of storm as well as fair weather, and that the conditions we have described above made the entry unreasonably dangerous.

■ ■ The plaintiff alleges that the trial court failed to instruct the jury on her theory of the case. If her theory is warranted by the pleadings, evidence, and applicable law, she is entitled to have her theory presented to the court. Mousel v. Widicker, 69 N.W.2d 783 (N.D.1955). The court's entire instruction as to the duty of the defendant, as to both the public sidewalk and its own entryway, is as follows:

> "An invitee is a person who is invited or permitted to enter or remain on the premises of the owner for the owner's purpose. The owner is required to exer-

cise ordinary care to warn the invitee or to make the premises safe for him as to concealed dangerous conditions or activities known to the owner or which the owner could reasonably be expected to discover. The obligation exists only while the visitor is upon the part of the premises to which his invitation extends.

. . . . . .

"You are instructed that if you find the plaintiff, Mildred Johanson, slipped and fell upon the public sidewalks running in front of the Piggly Wiggly store from a natural accumulation of ice or snow, then your verdict should be for the defendant for a dismissal of plaintiff's complaint.

"You are instructed that it is the duty of the defendant, Nash Finch Company, as the tenant of business property to exercise reasonable care to keep its business premises reasonably safe for its customers, including the plaintiff, Mildred Johanson, and in this regard, the defendant has the duty to warn its customers of dangerous conditions that it knows about or in the exercise of ordinary care should know about, that without such a warning, the customer would not be able to see."

The latter two paragraphs were adapted from requested instructions by the defendant.

From the foregoing, it will be seen that the jury was told that the owner's liability was limited to using ordinary care (1) to warn the invitee or make the premises safe for him as to *concealed* dangerous conditions or activities known to the owner or which the owner could reasonably be expected to discover; (2) to *keep* its business premises reasonably safe for its customers; and (3) again, to warn its customers of dangerous conditions that it knows about or in the exercise of ordinary care should know about, that without such warning the customer would not be able to see.

Thus, as to the premises occupied by the defendant, the jury was told that the defendant had a duty to *keep* its premises reasonably safe for its customers, and was told twice that the defendant had a duty to warn as to *concealed* dangerous conditions.

■ Nowhere was the jury advised that the facts presented a question for its decision as to whether the physical arrangement of the entryway created an unreasonable risk to invitees to the store. Such instruction should have been given. Invitees are entitled to assume that the invitor has used reasonable care to keep and maintain the premises in a reasonably safe condition. Huus v. Ringo, 76 N.D. 763, 39 N.W.2d 505 (1949), and 77 N.D. 837, 47 N.W.2d 216 (1951); McCullagh v. Fortune, 76 N.D. 669, 38 N.W.2d 771 (1949).

This duty is not entirely dependent upon whether the danger is latent or patent, concealed or obvious. Zatina v. Greyhound Lines, Inc., 442 F.2d 238 (C.A.8 1971, construing N.D. law); and see McCullagh v. Fortune, *supra.*

■ Since the plaintiff was given no opportunity to except to the instructions, all are deemed excepted to. Rule 51(c), N.D.R.Civ.P.

A further specification of error is that the court erroneously instructed the jury on the question of assumption of risk. The court gave a standard instruction on assumption of risk which has been used in this State:

"If a person has actual knowledge of a situation fraught with danger and, having freedom of choice and an appreciation of the dangerous situation then existing, freely and voluntarily exposes herself to the hazard before her, and a mishap is proximately caused by the danger encountered, she assumes the risk of the injuries thereby received and is precluded from recovery of damages,

whether or not she or the adverse party is negligent.

"To have freedom of choice, the injured claimant, without violating any legal or moral duty, must have had a reasonably safe opportunity to avoid exposing herself to the danger confronting her." Source: North Dakota Jury Instruction 704.

The plaintiff alleges that this instruction is inappropriate where, as here, the plaintiff was only doing what she had a right to do, entering a public place. We believe that instructions in conformity with Section 343A, 2 Restatement of Torts 2d, discussed below, more correctly state the rules on assumption of risk and contributory negligence as related to invitees, and an instruction in accordance therewith should be used upon retrial. However, we do not hold that the use of NDJI 704 was error in this case.

A correct statement of the duty of occupiers to business invitees is found in Prosser, Law of Torts, Fourth Edition, Section 61, at pages 392–393:

"The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. But the obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm. The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use. The obligation extends to the original construction of the premises, where it results in a dangerous condition. The fact that the premises are open to the public must be taken into account, and will call for greater care than in the case of a visitor at a private home. . . .

"On the other hand there is no liability for harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the occupier did not know and could not have discovered with reasonable care. The mere existence of a defect or danger is not enough to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it."

▬ Prosser, in the section previously quoted, proceeds to discuss the so-called assumption-of-risk aspects of cases such as we have here:

"Likewise, in the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself. It is for this reason that it is so frequently held that reasonable care requires nothing more than a warning of the danger. But this is certainly not a fixed rule, and all of the circumstances must be taken into account. In any case where the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display, or that after lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; or where the condition is one which would not reasonably be expected, and for some reason, such as an arm full of bundles, it may be anticipated that the visitor will not be looking for

it. It is true also where the condition is one such as icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, and, because the premises are held open to him for his use, it is to be expected that he will nevertheless proceed to encounter it. In all such cases the jury may be permitted to find that obviousness, warning or even knowledge is not enough. It is generally agreed that the obligation as to the condition of the premises is of such importance that it cannot be delegated, and that the occupier will be liable for the negligence of an independent contractor to whom he entrusts maintenance and repair." Prosser, Law of Torts, 4th Ed., Sec. 61, pp. 394–395.

Restatement, Torts, Second, Section 343, states the rule of duty as follows:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

Restatement, Torts, Second, Section 343A, has a bearing on questions of assumption of risk and contributory negligence. It reads:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

"(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated."

Particularly relevant is Comment f under Subsection (1), pointing out that there are cases in which the possessor of land can and should anticipate that a dangerous condition will cause physical harm to an invitee notwithstanding its obvious nature. Examples include invitees whose attention is distracted, as by attractive window displays or the carrying of packages. And, "Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. . . . It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances."

It will be seen that the duty of the defendant to the plaintiff is incompletely stated in the instructions as given. The instructions do not cover the question of whether the physical layout of the entryway, as we have described it, coupled with the reasonable expectation of stormy weather in the winter, and the certainty of its use by large numbers of people constantly opening and closing the door, created an unreasonably hazardous condition. This is a question which should be given to the jury under appropriate instructions.

The jury in the instant case was told, in effect, that the existence of an ob-

vious danger precluded recovery by the plaintiff. It should have been told that it had the duty to decide whether the defendant should have anticipated harm to invitees despite the obviousness, if any, of the danger.

■ The plaintiff complains that the court overemphasized an otherwise proper instruction by giving it, in slightly varying terminology, three times in the course of the instruction of the jury. The language is as follows:

"The mere fact that a mishap occurred, considered alone, is not in itself evidence of negligence on the part of any of the people involved. You have no right to assume that the mishap was caused by negligence or other wrongful conduct of anyone.

. . . . . .

"The mere fact that an accident happened, considered alone, does not give rise to a legal inference that it was caused by any negligence or that any party to this action was negligent.

. . . . . .

"The court further instructs the jury that damages cannot be awarded for a mere accident. . . ."

Such repetition surely gives undue prominence to the rule, but we do not hold that the overemphasis, standing alone, is ground for reversal.

The plaintiff made certain requests for instructions, which the court did not give. Rule 51(b), N.D.R.Civ.P., requires that—

"The court shall inform counsel in writing of its action upon requested instructions prior to their argument to the jury."

■ Counsel for plaintiff asserts, and the record bears him out, that such information was not given. He alleges that his client was prejudiced by the failure of the court to inform counsel of the action upon the requested instructions. He asserts that the prejudice arose when he attempted to argue to the jury certain questions relating to the duty of the defendant to provide a safe entryway and was interrupted and admonished by the court for going outside the issues, thus prejudicing his client in the eyes of the jury. However, we are unable to rule upon this question because of the lack of a record. The jury arguments were not transcribed or reported in any way. Just as we cannot say, in the absence of a record of the argument, that an argument by counsel was prejudicial or improper [Tice v. Mandel, 76 N.W.2d 124 (N.D.1956)], neither can we say, in the absence of a record, that a ruling by the court during an unreported summation to the jury is prejudicial. See State v. Steele, 211 N.W.2d 855 (N.D.1973).

■ Rule 51(b) is not intended to be a trap for the courts, nor does every violation of it by a court require a new trial. Wright & Miller, Federal Practice and Procedure, Sec. 2552.

■ We believe that counsel for the plaintiff could have inquired as to the fate of his requested instructions and would have received an answer prior to commencing his argument. If the court had refused to give the information, a different question would have been presented, and we would more likely have found prejudice.

We note in passing that North Dakota's Rule 51 differs from Federal Rule 51 in that it requires a court to inform counsel *in writing* prior to the commencement of argument to the jury. No doubt this requirement was wisely made in order to avoid disputes as to whether counsel were advised as to what requested instructions were being given and which ones were not being given. Here, it clearly appears that the advice was not given, but we hold that in this case it was not prejudicial to fail to do so.

Appellant also complains of remarks of the court which she believes to have been unjustly critical of her attorney. We have

examined the remarks and find that they were isolated and harmless.

■ Appellant alleges error in not permitting an expert witness to testify as to the purpose and effect of an asphalt sealer applied to the area between the wall and the sidewalk after the accident. On the record made, the ruling was within the court's discretion, and, since no offer of proof was made, the record is inadequate to raise the question even if the court had erred.

Reversed, and a new trial ordered.

ERICKSTAD, C. J., and TEIGEN, KNUDSON and PAULSON, JJ., concur.