Orlin JORE and Carol Jore,
Plaintiffs-Appellants,

v.

SATURDAY NIGHT CLUB, INC., a
corporation, doing business as Club
81, Defendant-Appellee.

Civ. No. 9060.

Supreme Court of North Dakota.

April 2, 1975.

William W. Binek, Nelson & Binek, Grand Forks, Joel Gilbertson, Senior Law Student, for plaintiffs-appellants.

C. Nicholas Vogel, Vogel, Vogel, Brantner & Kelly, Fargo, for defendant-appellee.

PAULSON, Judge.

A dramshop action was commenced by Orlin Jore and Carol Jore, as surviving parents of Roberta S. Jore, their 17-year-old daughter, against the Saturday Night Club, Inc., a corporation, doing business as Club 81, in the City of Grand Forks. The trial of

the action was held in Grand Forks County District Court and a jury returned a verdict for Club 81. The Jores moved for a judgment notwithstanding the verdict or in the alternative for a new trial. The motion was denied, and it is from the order denying such motion that the Jores appeal.

Roberta S. Jore was fatally injured at approximately 12:30 a. m. on April 30, 1972, on Gateway Drive in the City of Grand Forks, when a motorcycle driven by Steven Edward Coss, and on which she was a passenger, collided with an automobile driven by Howard E. Nygard.

On the night of April 29, 1972, Miss Jore and two other girls attended a party at the Holiday Inn in Grand Forks. A number of young people were in attendance at the party, including Steven Edward Coss, who was 17 years of age. During the course of the party, Coss and another minor, named Richard Bohlman, left the Holiday Inn and proceeded to Club 81. They were admitted to the Club 81 bar, where, after drinking some beer on the premises, Coss purchased a 12-pack of beer; and the two youths then returned to the party at the Holiday Inn.

After Coss returned with his friend Bohlman to the Holiday Inn, Coss gave a motorcycle ride to his girl friend (whom he later married), and, subsequently, he gave a motorcycle ride to Miss Jore. Coss and Miss Jore proceeded south from the Holiday Inn to University Avenue, then in an easterly direction on University Avenue, then north on Columbia Road, and then west on Gateway Drive to complete the circuit to the Holiday Inn. The accident occurred as Coss' motorcycle was proceeding west on Gateway Drive.

Miss Jore died at the scene of the accident from injuries she received. Steven Coss was hospitalized because of severe injuries he received. A sample of Coss' blood was taken at the hospital and transmitted to the State Toxicology Laboratory for analysis. The results of the laboratory's tests indicated a blood alcohol content of approximately 0.10 percent by volume.

Section 5–01–06, N.D.C.C., commonly known as the "Dram Shop Act" or the "Civil Damage Act", provides:

*"Recovery of damages resulting from intoxication.*—Every wife, child, parent, guardian, employer, or other person who shall be injured in person, property or means of support by any intoxicated person, or in consequence of intoxication, shall have a right of action against any person who shall have caused such intoxication by disposing, selling, bartering, or giving away alcoholic beverages contrary to statute for all damages sustained."

The Jores contend that they have proved a case under this statute, and predicate as erroneous:

1. The trial court's refusal to give Plaintiffs' Requested Jury Instruction No. 1, which defined the phrase "under the influence of intoxicating liquor";

2. The trial court's refusal to allow a chemist employed by the State Toxicology Laboratory to testify as to the effect of a 0.10 percent blood alcohol content upon a hypothetical person;

3. The trial court's denial of the motion for a judgment notwithstanding the verdict or in the alternative for a new trial; and

4. The trial court's refusal to give Plaintiffs' Requested Jury Instruction No. 16, which pertains to damages recoverable under § 5–01–06, N.D.C.C.

We shall consider these issues in the order presented.

The Jores' first contention is that the trial court erred in refusing to give Plaintiffs' Requested Jury Instruction No. 1, which reads:

"PLAINTIFFS' REQUESTED
INSTRUCTION # 1

"The phrase 'under the influence of intoxicating liquor' is a flexible term. The mere fact that the driver of a motor

vehicle may have consumed intoxicating liquor does not necessarily render him 'under the influence of intoxicating liquor'. The circumstances and effect must be considered. On the other hand, the driver of a motor vehicle need not be intoxicated or in a state of drunkenness to be 'under the influence of intoxicating liquor'. This expression covers not only all the well-known and easily recognized conditions and degrees of intoxication, but also any abnormal mental or physical condition which is the result of indulging to any degree in intoxicating liquors, and which tends to deprive a driver of that clearness of intellect or control of himself which he would otherwise possess. Accordingly, if intoxicating liquor has affected the nervous system, brain, or muscles of a driver of a motor vehicle so as to impair, to an appreciable degree, his normal ability to operate a motor vehicle, he is 'under the influence of intoxicating liquor'. Whether Steven Coss was 'under the influence of intoxicating liquor' is a question of fact for you to determine."

It is the Jores' position that the phrase "under the influence of intoxicating liquor" is synonymous with "intoxication", as that word is used in the North Dakota Dram Shop Act and that, therefore, the above Requested Jury Instruction No. 1 should have been given to the jury.

We note at the outset that the trial judge in his instructions to the jury defined "intoxicated" and charged the jury that there is a distinction between the term "under the influence of intoxicating beverages" and the term "intoxicated". Such instructions, as given to the jury, are as follows:

"A person is intoxicated within the meaning of these instructions when his manner is unusual or abnormal and his intoxicated condition is reflected in his walk or conversation, when his ordinary judgment and common senses are disturbed, when his willpower is temporarily suspended, and these or similar symptoms result from the use of alcoholic beverages and become reasonably discernible to a person of ordinary experience. It is not necessary that the person should be so-called 'dead drunk' or helplessly intoxicated. It is enough that his senses are obviously destroyed or substantially impaired by the use of intoxicating beverages.

"You are further instructed that there is a distinction in this State between the term 'intoxicated' and the term 'under the influence of intoxicating beverages.' The term 'under the influence' covers any abnormal or physical condition which is the result of indulging to any extent in the use of intoxicating liquor which tends to deprive a person of the clearness of intellect and control of himself that he would otherwise possess. 'Intoxication' on the other hand, as heretofore defined, requires that the senses be obviously destroyed and the effect of consuming alcoholic beverages be reasonably discernible to a person of ordinary experience. A person may be 'under the influence of intoxicating beverages' even though he is not intoxicated. Thus, in this case before you can find that plaintiffs are entitled to recover from defendant, you first must find that Steven Coss was intoxicated and not simply under the influence of intoxicating beverages when the accident occurred."

No exception was made to the giving of these instructions, although counsel were given the trial court's proposed instructions, had a reasonably sufficient time to study them, and were given opportunity to object to the instructions. Consideration of this issue is properly precluded, as this court held in Waletzko v. Herdegen, 226 N.W.2d 648 (N.D.1975), in paragraph 5 of the syllabus:

"Instructions that are submitted to the parties for exception and are not objected to, after an attorney for a party has had

them for a reasonably sufficient time to study them, become the law of the case and any objections to them are waived. Rule 51, N.D.R.Civ.P."

Furthermore, the Jores' Requested Instruction No. 1 maintains the distinction between being under the influence of intoxicating liquor and being intoxicated. The definition of "under the influence of intoxicating liquor" contained in such requested instruction is substantially similar to that given to the jury in the trial court's instructions. A trial court may properly refuse tendered instructions which are covered by instructions given on its own motion. Danielson v. State, 155 Neb. 890, 54 N.W.2d 56 (1952); see State v. Champagne, 198 N.W.2d 218, 234–235 (N.D.1972).

We deem it appropriate, however, to fully discuss the Jores' allegations of error, as they present important questions of North Dakota law.

The Jores contend that there should be no difference between the phrase "under the influence of intoxicating liquor" and the word "intoxication" as used in our Dram Shop Act. They cite as authority for this proposition the case of Borstad v. La Roque, 98 N.W.2d 16 (N.D.1959), a guest case in which this court stated that, for purposes of the guest statute, there is no difference between being "under the influence of intoxicating liquor" and being "intoxicated".

Club 81 refers us to the case of State v. Glavkee, 138 N.W.2d 663 (N.D.1965), wherein we affirmed, for the purpose of enforcing a criminal statute, the distinction between being under the influence of intoxicating liquor and being intoxicated. We stated in Glavkee that:

". . . a person may be 'under the influence of intoxicating liquor' within the meaning of the statute forbidding the operation of a vehicle upon the highway even though he is not intoxicated." Glavkee, supra 138 N.W.2d at 667.

Club 81 contends that Glavkee provides the appropriate precedent.

This issue is not one that will be resolved by analogy to either precedent; that is, neither the Glavkee case—a criminal action—nor the Borstad case—which was decided on the peculiarities of our former guest statute—may be logically extended to the case at bar. Rather, our determination is to be made from a consideration of the Dram Shop Act itself, its wording, and its intended function in our society. We do recognize, however, that for varying purposes "intoxication" and "under the influence of intoxicating liquor" have been held to have different meanings. See, e. g., Thompson v. Bryson, 19 Ariz.App. 134, 505 P.2d 572 (1973); Rivers v. Conger Life Insurance Company, 229 So.2d 625 (D.C.App. Fla.1969).

There is nothing in the wording of our Dram Shop Act that indicates that the Legislature intended to equate "intoxication" with being "under the influence of intoxicating liquor." The fact that the latter term has a specialized, well-defined meaning would indicate that, through its omission from the Dram Shop statute, the Legislature did not intend to embody its meaning within that statute.

The expression "under the influence of intoxicating liquor" has been defined in Glavkee, supra 138 N.W.2d at 667 [citing State v. Hanson, 73 N.W.2d 135, 140 (N.D. 1955)] to mean:

"[A] . . . condition created when a person's mental and physical functions have become abnormal to some slight extent from the use of intoxicating liquor; that it is immaterial whether the amount of liquor consumed was large or small."

To attribute this interpretation to the word "intoxication" as used in our Dram Shop Act, would be to distort the function of that statute, thereby imposing civil liability upon a seller of liquor even though that seller is unable to discern that the buyer is, in any way, intoxicated. We shall not attribute that interpretation to such statute.

The Minnesota Supreme Court has had occasion to consider the issues now before us and we find its reasoning pertinent. In Strand v. Village of Watson, 245 Minn. 414, 72 N.W.2d 609, 615 (1955), the Minnesota Supreme Court stated:

". . . the person to whom the sale is made must be intoxicated to such an extent that the seller, using his usual and reasonable powers of observation, sees or should see that the buyer is intoxicated. In other words, there must be such outward manifestation of intoxication that a person using his reasonable powers of observation can see or should see that such person has become intoxicated. In that respect, while the terms may be more or less synonymous, there is a manifest difference between the term 'under the influence of intoxicating liquor,' . . . as used in our [Minnesota] traffic laws, and the term 'obviously intoxicated' . . . ."

It was later stated by the Minnesota Supreme Court, in the case of Hartwig v. Loyal Order of Moose, Brainerd Lodge, 253 Minn. 347, 91 N.W.2d 794, 806 (1958):

"The definition as to when a person in the contemplation of the law is intoxicated ought not to be confused with that state which would be sufficient to find that the buyer here, if liquor had been sold to him, was under the influence of intoxicating liquor as that term is defined in our traffic laws. Care ought to be exercised in that respect both in the reception of the evidence and the instructions to the jury so that they may not arrive at a verdict on a wrong concept of the applicable law. Both the Strand case [Strand v. Village of Watson, [245 Minn. 414,] 72 N.W.2d 609 (1955)] and the Ad-

amson case [Adamson v. Dougherty, [248 Minn. 535,] 81 N.W.2d 110 (1957)] chart the procedural course under the Civil Damage Act."

█ The reasoning of Strand was, in essence, that a seller should not be held liable for the sale of liquor to a person who manifests no signs of intoxication. Although the Minnesota Civil Damage Act, as construed in Strand, used the language "obviously intoxicated", we find the ultimate reasoning of Strand no less applicable where, as in North Dakota, only the word "intoxicated" is used.[1]

█ Absent a clear statement of our Legislature as to the definition of "intoxication", we hold in the instant case that the trial court's definition of the word "intoxication" and the court's refusal to give plaintiffs' requested instruction defining the phrase "under the influence of intoxicating liquor" was not error. Accordingly, we dismiss the Jores' first allegation of error.

Our decision should not be interpreted as an approval of the whole of the trial court's definition of "intoxication", as given to the jury. We do retain reservations as to that part of the instructions that require one's senses to be "obviously destroyed" before one may be said to be intoxicated. Our decision is only that, when construing our Dram Shop Act, the phrase "under the influence of alcoholic beverages" may not be equated with the word "intoxicated".

The second issue presented for decision is whether the trial court erred in refusing to allow Mr. David Shelton, a chemist with the State Toxicology Laboratory, to testify as to the effect that a 0.10 percent blood alcohol content would have upon a hypothetical

---

1. In 1967, the Minnesota Legislature deleted the word "obviously" from the phrase "obviously intoxicated" as used in the Minnesota Civil Damage Act, thereby imposing liability upon tavern owners for damages resulting from the sale of liquor to "intoxicated" persons. The Minnesota Supreme Court stated that this amendment placed an affirmative duty upon tavern owners to discover whether patrons were intoxicated, but went on to state that the "intoxication" must nevertheless be outwardly manifested before liability would be imposed. Cameron v. City of Fridley, 293 Minn. 110, 197 N.W.2d 233 (1972).

person. The avowed purpose of the hypothetical question was to relate to the jury evidence of Steven Coss' condition at the time of the accident. We need not reach the merits of this issue, as the question has not been properly preserved for appeal.

Recently we refused to review an alleged error relating to a trial court's exclusion of certain expert testimony. In Johanson v. Nash Finch Company, 216 N.W.2d 271 (N.D. 1974), the appellant alleged that it was error for a trial court to refuse to allow expert testimony as to the purpose and effect of certain repairs made by a defendant landowner subsequent to an accident that occurred on his property. We dismissed the allegation, stating in *Johanson, supra* 216 N.W.2d at 279:

"On the record made, the ruling was within the court's discretion, and, since no offer of proof was made, the record is inadequate to raise the question even if the court had erred."

In the case at bar, no offer of Mr. Shelton's testimony was made. We have no way of knowing what, in Shelton's opinion, the effect would be on Steven Coss of a 0.10 percent blood alcohol content. On this record, we are unable to determine whether the exclusion of Shelton's testimony was erroneous, or, even if erroneous, whether it was prejudicial to the Jores. Thus, we dismiss the Jores' second contention.

In fairness to the parties involved, we note that were we to decide this issue on the merits, we would likely affirm the trial court's action. It appears that the hypothetical question, as framed, did not include facts pertinent to the case being tried, but rather was of a general nature. Certain relevant facts, such as Coss' height and weight, and the time of the consumption of the alcoholic beverages, were not a part of the record. We would have difficulty reversing a trial judge on a matter within his discretion with such a record before

us. Questions calling for opinions of an expert witness must be based upon facts previously stated by the witness or upon facts testified to by others or upon facts agreed to or assumed to be true hypothetically. Fisher v. Suko, 98 N.W.2d 895 (N.D. 1959).

We shall now consider the contention that the trial court erred in ordering a denial of the motion for judgment notwithstanding the verdict or in the alternative for a new trial. As we held in Kunze v. Stang, 191 N.W.2d 526 (N.D.1971), in paragraphs 8 and 9 of the syllabus:

"8. On a motion for judgment notwithstanding the verdict the evidence must be viewed in the light most favorable to the party in whose favor the verdict was rendered and such motion should not be granted unless the evidence shows that the moving party is entitled to judgment on the merits as a matter of law.

"9. A motion for a new trial is addressed to the sound discretion of the trial court and a denial of such a motion will only be overturned on appeal when it is clear that there was a manifest abuse of discretion."

See also Waletzko v. Herdegen, *supra.*

The burden borne by the Jores on appeal is a substantial one. They must establish that they proved, as a matter of law, the elements required to establish liability under the Dram Shop Act, namely:

1. That Club 81 made an illegal sale of alcoholic beverages to Steven Coss;

2. That the consumption of the alcoholic beverages contributed to a state of intoxication in Steven Coss; and

3. That such intoxication was the cause of the accident in question.

We hold that the Jores have not sustained their burden of proof.

A review of the record of this case reveals that the evidence, when viewed in the

light most favorable to the verdict, sufficiently supports the jury's finding of no liability on the part of Club 81.

Testimony was given at trial by Richard Bohlman and Pamela Coss, both of whom were with Steven Coss on the evening of April 29, 1972, that Steven Coss did not appear to be intoxicated at any time pertinent to the lawsuit. Other testimony related that, on the evening of April 29, 1972, and the morning of April 30, 1972, Steven Coss felt no dizziness; that he walked normally; that his speech was unimpaired; and that his blood alcohol content was 0.098 percent by volume, subject to a plus or minus 5 percent variance, dependent upon the accuracy of the particular blood alcohol content test. In addition, the Grand Forks city policeman who investigated the accident testified that he gave aid to Coss immediately after the accident and at that time detected no odor of alcohol on Coss' breath.

Further testimony showed that before Mr. Howard E. Nygard, the driver of the automobile, crossed Gateway Drive he did not see the Coss motorcycle approaching from the east; that the Nygard vehicle entered Gateway drive in front of the motorcycle and that Coss did not have time to stop; and that, at the time of the collision, the Nygard vehicle was still moving across the westbound lanes of traffic.

The evidence of sale of the alcoholic beverages by Club 81 to Steven Coss was strong, but the jury need not have believed such testimony, as a jury need not accept even undisputed testimony. Waletzko v. Herdegen, *supra*, Syll. ¶ 9.

■ From this testimony in the case at bar, the jury could have concluded either that Coss was not intoxicated or that his actions were not the proximate cause of the accident. Either finding by the jury would effectively bar recovery under § 5–01–06,

N.D.C.C. Thus we find neither error nor abuse of discretion on the part of the trial court in denying the motion for judgment notwithstanding the verdict or in the alternative for a new trial.

■ The Jores' last contention is that the trial court erred in refusing to instruct the jury as to the "lost investment" theory of damages, as embodied in Plaintiffs' Requested Instruction No. 16. The refusal by the trial court to give this instruction, even if such a refusal were erroneous, could not have been prejudicial to the Jores, as the jury's determination of the liability issue precluded consideration of the question of damages. Counsel for the Jores does not dispute this and has conceded on oral argument that an affirmance of the jury's verdict as to liability would moot the issue of damages.

Should the question of the applicability of the "lost investment" theory of damages in this State be presented to this court, we will then examine the issue and make a determination thereon. Until that time we shall withhold comment upon the issue.

For reasons stated in this opinion, the order denying the motion notwithstanding the verdict or in the alternative for a new trial is affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.