# DAVID MJOS AND ANOTHER, MINORS, BY RUTH MJOS, THEIR PARENT AND NATURAL GUARDIAN, AND OTHERS v. VILLAGE OF HOWARD LAKE AND ANOTHER.

178 N. W. (2d) 862.

June 26, 1970—No. 42112.

428

*Carroll, Cronan, Roth & Austin* and *Robert M. Austin,* for appellant Waverly.

*Meagher, Geer, Markham & Anderson* and *O. C. Adamson II,* for appellant Howard Lake.

*Johnson, Schmidt, Thompson, Schneider & Lindstrom* and *John C. Lindstrom,* for respondents.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and James F. Murphy, JJ.

SHERAN, JUSTICE.

Appeal from an order of the district court vacating judgment for defendants and granting plaintiffs' motion for a new trial. The order is specifically based "on the exclusive grounds of error in the instructions with respect to fundamental law." Thus, it is appealable as of right.[1]

On December 1, 1967, a car operated by Irving Dalbec collided with one driven by Paul Mjos on a highway near Howard Lake, Minnesota. Paul Mjos was killed. His wife, Ruth Mjos, was injured. Peter Mjos, Julie Ann Mjos, and David Mjos are their children.

An action was started against the villages of Howard Lake and Waverly on the theory that the accident occurred because Dalbec became intoxicated as the result of consumption of intoxicating liquor furnished to him illegally at the municipal

[1] Rule 103.03(e), Rules of Civil Appellate Procedure; Kelsey v. Chicago, R. I. & P. R. Co. 262 Minn. 219, 114 N. W. (2d) 90.

liquor stores operated by each of the villages. Such claims are based on Minn. St. 340.95, which provides:

"Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained * * *."

The trial court, the Honorable William T. Johnson presiding, instructed the jury in part as follows:

"* * * [I]f the defendant sellers sold and furnished intoxicating liquor to Irving Dalbec at a time when he was obviously intoxicated, then the sellers made an illegal sale.

\* \* \* \* \*

"The seller is not required to subject a customer to any test to determine whether he is intoxicated except the test of observation. Unless it appears to the seller that the buyer is obviously intoxicated, or by the reasonable exercise of his powers of observation it should appear that he is intoxicated, the seller may lawfully continue to sell liquor to a customer.

"When we speak of 'obviously', that term is defined as that which is easily discovered, seen or understood, or such as is readily perceived by the eye or the intellect, or that which is plain or evident.

"When a person from the use of * * * intoxicating liquors has affected his reason or his faculties or has rendered himself incoherent of speech or has caused himself to lose control in any other manner, to any extent of the actions or motions of his person or body, such person in the contemplation of the law is intoxicated."

The jury returned a special verdict finding that the automobile collision which gave rise to the damages claimed by plaintiffs was proximately caused by the intoxication of Irving Dalbec but

that neither of the defendants had made a sale of intoxicating liquor to Dalbec at a time when he was obviously intoxicated. The trial court entered findings and conclusions confirming the jury's verdict and directing entry of judgment for defendants. Thereafter, although experienced counsel for both plaintiffs and defendants had acquiesced in the instructions as given and in the interrogatories as formulated, the trial court, upon motion made in behalf of plaintiffs, vacated a judgment for defendants and ordered a new trial upon the ground that the instructions as given were erroneous, explaining that he did so because the legislature had by amendment of Minn. St. 1965, § 340.14, subd. 1, eliminated the provision which made a sale to an intoxicated person illegal if, but only if, he was "obviously" intoxicated. L. 1967, c. 19, § 10, effective July 1, 1967.

In our view, the instructions as given under the circumstances of this case constituted an error of law which was so fundamental as to justify a new trial. We therefore affirm.

The reasons for our conclusion can be summarized by these propositions:

(1) Prior to the amendment of Minn. St. 1965, § 340.14, subd. 1, by the Minnesota Legislature in 1967, it was illegal to furnish liquor to an intoxicated person otherwise entitled to buy it only if he was *obviously intoxicated.*

(2) The elimination from Minn. St. 340.14, subd. 1, of the prohibition of sales of intoxicating liquors to *obviously intoxicated* persons by reason of the 1967 amendment revitalized an earlier statutory prohibition of § 340.73, subd. 1, forbidding the sale of intoxicating liquor to "intoxicated" persons.

(3) The word "intoxicated" in § 340.73, subd. 1, like the words "obviously intoxicated" in Minn. St. 1965, § 340.14, subd. 1, means intoxication which is disclosed by the behavior of the prospective purchaser. However, there may be a substantial difference between (a) the state of intoxication which would be reasonably observable in the behavior of the prospective purchaser if an affirmative effort to note external signs of inebriacy

is made and (b) the state of intoxication which affects the behavior of the prospective purchaser in such a way as to be obvious without such an effort. We interpret the 1967 amendment of § 340.14, subd. 1, whereby the "obviously intoxicated" standard was removed in favor of the "intoxicated" standard, as intended to impose an affirmative duty of active observation as distinguished from reasonable but passive perception of the obvious. The distinction is that which exists between evidence to be seen upon reasonable inquiry and that to be seen even though no affirmative effort whatever is made to discover it.

(4) The failure to instruct in accordance with the 1967 amendment was error of such significance as to justify a new trial.

■ A statute (now Minn. St. 340.73, subd. 1) has existed in Minnesota since 1861 by the terms of which it has been unlawful for any person to furnish intoxicating liquor to an intoxicated person.[2] From its enactment in 1933 until the 1967 amendment, § 340.14, subd. 1, provided that "[n]o intoxicating liquor shall be sold, furnished, or delivered for any purpose to * * * any person obviously intoxicated * * *." In Strand v. Village of Watson, 245 Minn. 414, 420, 72 N. W. (2d) 609, 614, this explanation of the situation prevailing until the amendment of 1967 is to be found:

"* * * By Ex. Sess. L. 1933, c. 46, our legislature adopted a rather comprehensive liquor control act in which the language now found in M. S. A. 340.14 first came into existence. There is some contention here that the enactment of Ex. Sess. L. 1933, c. 46, repealed by implication the former law, which is now § 340.73. That the law was not completely repealed by implication is evident from the fact that the legislature has recognized the existence of this section, insofar as the illegal sale to Indians is

---

[2] An accurate summary of our decisions in this area is provided in Village of Brooten v. Cudahy Packing Co. (8 Cir.) 291 F. (2d) 284. See, also, Note, 46 Minn. L. Rev. 169.

concerned, by amending the same by L. 1947, c. 87. However, insofar as the two acts are inconsistent, the usual rule prevails that the act later in point of time must control. It follows that, in determining whether an illegal sale has been made, the language found in § 340.14 is controlling."

■ In the Strand case we held that it was illegal to furnish liquor to an intoxicated person otherwise entitled to buy it only if he was "obviously intoxicated" within the meaning of § 340.14, subd. 1. In 1967 the Minnesota Legislature undertook by the enactment of L. 1967, c. 19, § 10, effective July 1, 1967, to amend and clarify § 340.14. In the process of doing so, it eliminated from the language of § 340.14, subd. 1, the prohibition against furnishing liquor to persons "obviously intoxicated."

While it may be logical to argue that a statute once repealed by implication cannot be revived by implication,[3] we will not blindly follow a rule of statutory construction which would make it legal to furnish liquor to an adult no matter how drunk he might happen to be at the time. It would take a clear expression of legislative intent to persuade us that the legislature abandoned entirely its policy of making it illegal to furnish additional intoxicants to one who has already consumed too much. These practical considerations compel us to conclude that the legislature intended to make the prohibition against sales to intoxicated persons embodied in § 340.73, subd. 1, operative from and after the effective date of the 1967 amendment of § 340.14, subd. 1, by which the words "obviously intoxicated" were eliminated from that section of the statutes.[4]

■ The statutory prohibition upon sales of intoxicating liquor to persons already intoxicated, whether based upon § 340.14, subd. 1, prior to the 1967 amendment or upon § 340.73, subd. 1, applies only if the intoxication is observable in the appearance

---

[3] See, Minn. St. 645.36.

[4] See, Lenz v. Coon Creek Watershed Dist. 278 Minn. 1, 153 N. W. (2d) 209; Stabs v. City of Tower, 229 Minn. 552, 40 N. W. (2d) 362.

or behavior of the person to whom the intoxicating liquor is furnished. We concluded in Strand v. Village of Watson, 245 Minn. 414, 422, 72 N. W. (2d) 609, 615, that for a person to be intoxicated "there must be such outward manifestation of intoxication that a person using his reasonable powers of observation can see or should see that such person has become intoxicated." In the Strand case we said that when intoxicating liquor has affected the user's reason or his faculties, or has rendered him incoherent of speech or has caused him to lose control of his actions or the motions of his body, he is intoxicated. These manifestations would be observable.

Neither the prohibition of sales of intoxicating liquor to persons "obviously intoxicated" within the meaning of § 340.14, subd. 1, prior to the 1967 amendment, nor the prohibition of sales to persons "intoxicated" within the meaning of § 340.73, subd. 1, can be interpreted as a legislative attempt to make it illegal to furnish liquor to a person who is intoxicated in fact but who gives no observable signs of his inebriacy. We believe it to be within the power of the legislature to impose what would be in effect an absolute liability on liquor dealers for the consequences of intoxication. Respondent argues that this was intended by the amendment of § 340.14 adopted in 1967. In our opinion, a change of this significance in the underlying philosophy of the Civil Damage Act would not be made by the legislature without a clear and unequivocal expression of its intention to do so.

Although the 1967 amendment did not eliminate the requirement that the subject's intoxication be observable, there may be a broad spectrum of behavior ranging from a minimal loss of control of mental or bodily function which would be observable to the reasonably prudent man making an affirmative effort of observation, to a state of intoxication so obvious as to be inescapably evident to anyone with functioning senses. We recognize that the various stages of intoxication cannot be defined precisely because individuals react differently to the influence of liquor depending upon the circumstances of consumption,

among other things. However, the words "obviously intoxicated" evoke a concept substantially different from that elicited by the simple word "intoxicated." While both states of intoxication must be manifest in the subject's behavior, the state of "obvious" intoxication would be readily and plainly evident without affirmative effort to perceive it and so clear that the observer would be bound to notice. Although a person is not "obviously intoxicated," the fact that he is "intoxicated" would be discoverable by reasonably active observation of his appearance, breath, speech, and actions. This distinction is so fundamental that we must regard the 1967 amendment of the Civil Damage Act as changing the degree of care required of liquor suppliers in observing the behavior of prospective purchasers from a level of noticing conduct which obviously and clearly exhibits the loss of control of one's actions or motions, to a level requiring such thorough or prolonged observation of the subject's appearance, speech, and actions as would in the exercise of reasonable care, reveal to the observer a loss of control of the actions or motions of the subject's person or body in any significant manner, to any significant extent.[5]

We do not interpret § 340.73, subd. 1, as imposing upon the supplier of liquor the burden of determining the level of subjective or physiological intoxication of the prospective purchaser, failing which he supplies the liquor at his own risk. As stated in Strand v. Village of Watson, 245 Minn. 414, 422, 72 N. W. (2d) 609, 616:

"* * * It can hardly be supposed that the seller of intoxicating liquor must subject a buyer to a blood test or urinalysis between each drink or sell at his peril if there are no signs of intoxication which should reasonably lead him to conclude that the time has come to refuse to sell more liquor."

---

[5] See, State v. Simonsen, 252 Minn. 315, 89 N. W. (2d) 910; Trail v. Village of Elk River, 286 Minn. 380, 175 N. W. (2d) 916; Note, 46 Minn. L. Rev. 169, 192.

However, the change of the statutory standard for prohibition of further sales of intoxicating liquor does require that the seller take such affirmative steps as a reasonably prudent man would regard as adequate to ascertain whether the conduct of the prospective purchaser manifests such loss of control of actions or motions as would make it illegal to furnish him more liquor. This may require the supplier of liquor to engage the prospective purchaser in conversation, to note specifically the details of the purchaser's physical appearance, to observe the purchaser's conduct during the course of his drinking at the supplier's establishment, or to scrutinize the actions of the prospective customer in other ways by which the supplier may detect intoxication which is observable even though not obvious.

■ It is apparent that experienced counsel for both parties and the trial court were unaware of the 1967 changes in the Civil Damage Act which are pertinent to this action. Suit was brought on the theory that any sale of intoxicating liquor to Dalbec by the defendant municipalities was illegal only if he was already "obviously intoxicated"; counsel for plaintiffs requested jury instructions in accordance with that theory; and no objection to the instructions on this point was made either at trial or in the usual post-trial motions. The trial court and counsel for defendants acquiesced in trial and submission of the case to the jury under the standard of obvious intoxication. Counsel for plaintiffs predicated their second motion for judgment n. o. v. or a new trial[6] on the theory that the instructions were errone-

---

[6] It is within the discretion of the trial court to allow a party to make a second motion for judgment n. o. v. or for a new trial following denial of his first motion for such relief, and granting of the second motion is not an abuse of discretion, especially where the second motion is based upon grounds brought to the court's attention after denial of the first motion. Mitchell v. Bazille, 216 Minn. 368, 13 N. W. (2d) 20; National Citizens Bank v. McKinley, 111 Minn. 214, 126 N. W. 526. Cf. Kane v. Locke, 218 Minn. 486, 16 N. W. (2d) 545. Following denial of a motion for post-trial relief, a second motion for the same relief may be regarded as a motion to vacate the order denying the first motion. Trickel

ous because not in accord with the 1967 amendment, and the trial court granted a new trial.

Although it was error to instruct the jury that sales of intoxicating liquors to Dalbec by defendant villages were illegal only if he was then "obviously" intoxicated, a retrial of this case would be justified only if the instructions as given were highly prejudicial to plaintiffs' cause of action. We have decided to accept the trial court's judgment that the error of law in this case was so fundamental as to have a potentially determinative influence upon the lawsuit.[7] As Judge Johnson pointed out in his memorandum, testimony by plaintiffs' witnesses would support the conclusion that Dalbec was "obviously intoxicated" at the time of the sales here in question, while some of the testimony by defendants' witnesses, or prior statements made by them, would support the finding that Dalbec was at least "intoxicated" at the time. There was also evidence that Dalbec was sober at the time of the sales. It is possible that use of the correct standard of intoxication could have been of critical importance. The instructions as used carefully specified and emphasized that the sale of intoxicating liquor to Dalbec was illegal only if he was then "obviously" intoxicated. The definition of "obviously" in the instructions would tend to further emphasize this standard to the jurors. Even more significant, two of the special interrogatories submitted to the jury asked specifically whether either of defendant villages had sold intoxicating liquor to Dalbec when he was *"obviously"* intoxicated. Finally, and perhaps decisive

---

v. Calvin, 230 Minn. 322, 41 N. W. (2d) 426; Lavelle v. Anderson, 197 Minn. 169, 266 N. W. 445.

[7] Rules of Civil Procedure, Rule 51, states: "* * * An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court." Donald v. Moses, 254 Minn. 186, 94 N. W. (2d) 255. The recent case of Miller v. Tongen, 281 Minn. 427, 161 N. W. (2d) 686, must be distinguished on the ground that appellant's request for instructions in that case was made with full knowledge of the state of the law relevant thereto.

.

of the question, we have this factor: During the jury's deliberations, the foreman returned to the trial court for further instructions "pertaining to intoxication" and, in response, the trial court reread the proscription of § 340.14 that "[n]o intoxicating liquor shall be sold for any purpose to any person obviously intoxicated."

We therefore accept Judge Johnson's assessment that the use of these instructions, in the circumstances of this case, constituted such a fundamental error of law and was so highly prejudicial to plaintiffs' cause of action as to require a new trial. The word "obviously" is a strong word in common parlance. When used in conjunction with the term "intoxicated," it connotes familiar images of a person in a drunken condition. It would require substantially less indication of the purchaser's state of intoxication at the time of the allegedly illegal sale in order to prove simply that he was intoxicated. Where an error of law is fundamental and prejudicial, as found by the trial court, we are disposed to accede to the order granting a new trial even though the case is an extremely close one.

Having determined that the use of instructions not in accord with the applicable law requires a new trial in the circumstances of this case, we do not reach the other issue raised by plaintiffs on appeal.

Affirmed.