## RICHARD J. CAMERON AND ANOTHER v.
## CITY OF FRIDLEY.

197 N. W. 2d 233.

April 21, 1972—No. 42953.

*Schermer, Schwappach, Borkon & Ramstead* and *Edward H. Borkon,* for appellants.

*Carroll, Cronan, Roth & Austin* and *George S. Roth,* for respondent.

Heard before Knutson, C. J., and Murphy, Otis, and Peterson, JJ.

MURPHY, JUSTICE.

This civil damage action under Minn. St. 340.95 was brought by plaintiffs, Richard J. and Delores Cameron, against the city of Fridley, operator of a municipal liquor establishment. The jury, by special verdict, found that no illegal sale of an intoxicat-

ing liquor had been made to an intoxicated automobile driver who caused the damage which is the subject of this action. Plaintiffs appeal from a judgment entered pursuant thereto and from an order denying their alternative motion to set aside the special verdict and to substitute therefor judgment in favor of plaintiffs on the issue of liability or for a new trial on all issues. Plaintiffs assert that the trial court erred in refusing to instruct the jury that the employees at defendant's liquor establishment had a duty to take affirmative steps to observe signs of intoxication of a patron prior to selling liquor to him.

It appears from the record that plaintiff-wife, accompanied by her 11-year-old son, was operating her automobile on East River Road in Anoka County when an automobile, operated by one Lester McCloud, crossed the centerline of the highway and collided head-on with her vehicle. Mrs. Cameron sustained serious injuries and her 11-year-old son was killed as a result of the accident. The record establishes that the highway had two lanes for traffic in each direction with a yellow centerline. Each lane was 14 feet wide. Mrs. Cameron had observed the McCloud car coming from the opposite direction, and when it was about 200 or 300 feet away, she observed that it began to weave back and forth over the centerline. She was unable to move to her right because of traffic in the outside lane. The McCloud vehicle crossed entirely into her lane and, despite her efforts, a head-on collision occurred. The impact was of sufficient force to drive her car backwards approximately 30 feet. The record fully establishes that at the time of the accident McCloud was intoxicated and that the accident occurred as a result of his negligence in the operation of his vehicle.

At the scene of the accident McCloud's intoxication was evidenced by slurred speech and a heavy odor of alcohol on his breath. The physician who was called to attend him observed that he was poorly coordinated, his blood pressure was low, and his pulse fast—symptoms consistent with intoxication rather than injuries. A laboratory test established that the percentage

of ethyl alcohol in a blood sample taken from McCloud was .19 percent by weight. The chemist who performed that test stated that an alcohol concentration of .15 percent is the level at which all persons can be said to be intoxicated. A witness from the State Crime Bureau Laboratory testified that under standards set by the National Safety Council, as approved by the American Medical Association, a person with a blood alcohol reading of .10 percent is considered intoxicated. In his opinion, "any person with a blood alcohol level of .19 percent is very definitely intoxicated, and impaired in both his mental and physical ability." He also testified that a person who had consumed enough to produce such a reading would show obvious effects of impairment reflected in unsteadiness on the feet, slurring of speech, and personality changes.

On the day of the accident, McCloud, a truckdriver, left work at 3:30 or 4 p. m. and went directly to the Fridley Municipal Bar. He remained there continuously until 7 p. m., except for a period from 6 to 6:30 p. m. when he went to have his car filled with gasoline. He returned with a friend, one Larry Collins. While McCloud admitted having consumed about 8 bottles of strong beer in the interval between 4 to 7 p. m., the percentage of ethyl alcohol found in his blood by chemical test, which indicated a consumption equivalent to 12 bottles of strong beer, is a more reliable indication of the amount of liquor he consumed. He recalled leaving the bar and starting his car but had no recollection of the accident which occurred less than 10 minutes later.

The testimony of the defense, directed to the issue of whether defendant illegally sold intoxicating liquiors which, in the words of the statute, "caused the intoxication" of McCloud, came from two bartenders and a waitress employed by defendant. McCloud's companion, Collins, also testified in behalf of the defense. It would appear from their testimony that while he was at the bar, McCloud did nothing to indicate by his speech and conduct that he was intoxicated. It would appear that the witnesses' observations were casual rather than concerned and attentive. Collins

testified that he and McCloud had had 2 bottles of beer together about 7 p. m., that McCloud had behaved normally, and that Collins had observed no odor of alcohol. When he had come to the bar with McCloud, he had observed that McCloud was quite cautious in the operation of his car in traffic.

The record compels the conclusion that at the time of the accident McCloud's faculties were greatly impaired by intoxication. Plaintiffs contend that the verdict finding they were not entitled to the protections and benefits of § 340.95, which permits recovery against the person who, by the sale of intoxicating liquors, caused the intoxication of his patron, resulted from the trial court's inaccurate and incomplete instruction with reference to the duty imposed by law upon defendant seller. Before the case was submitted to the jury, plaintiffs argued to the court that the testimony of defendant's employees to the effect that they did not notice signs of intoxication was not sufficient under the circumstances of the case to absolve defendant from the duty which the law imposes. Plaintiffs accordingly requested an instruction to the effect that the seller of intoxicating liquor is under a duty to take affirmative steps to see that "which would be observable to a reasonably prudent man making an affirmative effort of observation." Mjos v. Village of Howard Lake, 287 Minn. 427, 433, 178 N. W. 2d 862, 867 (1970); Kluger v. Gallett, 288 Minn. 11, 178 N. W. 2d 900 (1970). The instruction which plaintiffs sought, as expressed in Mjos and Kluger, went beyond the duty to observe and included the affirmative duty to inquire and actively to observe the patron's condition. In instructing the jury as to defendant's duty, the trial court used an instruction previously employed in cases which were tried on the theory that the defendant was not liable unless the customer was "obviously" intoxicated. The trial court told the jury:

"Before there can be an illegal sale, the person to whom the sale is made must be intoxicated to such an extent that the seller, using his usual and reasonable powers of observation sees or should see that the buyer is intoxicated. In other words, there

must be such an outward manifestation of intoxication that a person using his reasonable powers of observation can see or should see that such person has become intoxicated."

It seems to us that this instruction overlooks the fact that the amendment to Minn. St. 1965, § 340.14, subd. 1, by L. 1967, c. 19, § 10, eliminates the criterion of obvious intoxication and imposes upon the dispenser of intoxicating liquor an affirmative duty, not only to utilize the usual powers of observation of a reasonably prudent person engaged in the business of selling intoxicating liquor to the public, but also to maintain a more careful scrutiny and surveillance of the patron who drinks to excess on the seller's premises. We emphasized in Kluger v. Gallett, *supra,* that the intent of the legislature, in amending the Intoxicating Liquor Act so as to remove "obviously intoxicated" from § 340.14, subd. 1, was not to impose absolute liability but to increase the seller's affirmative duty to inquire into, or otherwise more actively to observe, his patron's possible intoxication at the time of sale. The thrust and purpose of the amendment is fully discussed in Mjos where we said (287 Minn. 434, 178 N. W. 2d 867) :

"* * * Although a person is not 'obviously intoxicated,' the fact that he is 'intoxicated' would be discoverable by reasonably active observation of his appearance, breath, speech, and actions. This distinction is so fundamental that we must regard the 1967 amendment of the [Intoxicating Liquor Act] as changing the degree of care required of liquor suppliers in observing the behavior of prospective purchasers from a level of noticing conduct which obviously and clearly exhibits the loss of control of one's actions or motions, to a level requiring such thorough or prolonged observation of the subject's appearance, speech, and actions as would in the exercise of reasonable care, reveal to the observer a loss of control of the actions or motions of the subject's person or body in any significant manner, to any significant extent.

"* * * [T]he change of the statutory standard for prohibition of further sales of intoxicating liquor does require that the seller take such affirmative steps as a reasonably prudent man would regard as adequate to ascertain whether the conduct of the prospective purchaser manifests such loss of control of actions or motions as would make it illegal to furnish him more liquor. This may require the supplier of liquor to engage the prospective purchaser in conversation, to note specifically the details of the purchaser's physical appearance, to observe the purchaser's conduct during the course of his drinking at the supplier's establishment, or to scrutinize the actions of the prospective customer in other ways by which the supplier may detect intoxication which is observable even though not obvious."

It is apparent that the court neglected to explain to the jury, as plaintiffs requested, that the duty of reasonable care required the liquor seller to make an affirmative effort of observation to note signs of intoxication which are not readily detectable by ordinary observation.

If the instruction is examined in its entirety in light of the evidence, the notion that it conveyed to the jury was that, since there was no "outward manifestation of intoxication" which came to the attention of defendant and its employees, there was no breach of the duty imposed by law. We think the jury should have been given guidelines which would more clearly particularize the duty of the seller in the context of the evidence. Applying the standards expressed in Mjos and Kluger to the particular circumstances of this case, the jury might well have found that defendant had a duty to act before any "outward manifestation of intoxication" occurred. The law does not comprehend that the seller may be indifferent to the patron who drinks to excess or that the seller may wait until trouble starts or the patron collapses physically before determining that a sale to him is illegal. Under the requested instruction, the jury could properly consider whether defendant should have been aware that the sale of drink after drink of intoxicating liquor over a period of about 3 hours

would necessarily produce the inebriation which actually followed. Aside from the evidence of the patron's physical appearance and manner, the jury could well consider, under proper instructions, whether the supplier failed in its duty to be aware of the natural and inevitable consequences which necessarily followed from the amount of intoxicating liquor the patron had consumed on its premises.

We have pointed out that even a technically accurate instruction is not sufficient if its impact upon a jury is reasonably likely to convey an erroneous understanding of the controlling principles of law. Zurko v. Gilquist, 241 Minn. 1, 62 N. W. 2d 351 (1954) ; 19 Dunnell, Dig. (3 ed.) § 9794.

We are accordingly of the view that, because the instruction failed to include the applicable standards of duty of the seller of intoxicating liquor as expressed in Mjos and Kluger, a new trial should be granted. The other points raised by the appeal do not require discussion.

New trial granted.