## JOHN JAROS AND ANOTHER v. WARROAD MUNICIPAL LIQUOR STORE.

227 N. W. 2d 376.

March 14, 1975—No. 44696.

*Neil A. McEwen,* for appellants.

*Rufer, Hefte, Pemberton, Schulze & Sorlie* and *Richard C. Hefte,* for respondent.

Heard before Peterson, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Plaintiffs brought actions in Roseau County District Court under the Dram Shop Act, against the Warroad Municipal Liquor Store for personal injuries sustained in an automobile accident occurring on the night of May 30, 1970, allegedly due to the negligence by reason of intoxication of one George Heinen, to whom defendant sold intoxicating liquor prior to the accident. George Heinen died as a result of the accident. Upon verdict for defendant and denial of plaintiffs' motion to amend answers to interrogatories of the jury, and for judgment notwithstanding the verdict, or for a new trial, plaintiffs appeal. We reverse.

The facts briefly are these: On the day of the accident, the decedent, George Heinen, had arrived at defendant's bar at approximately 5:30 or 6. Heinen was a daily patron, well known to defendant's employees. He remained at the bar until approximately 10:30, during which time he was served an undetermined quantity of strong beer.

Two witnesses testified concerning Heinen's conduct while at defendant's liquor establishment. Elsie Mende, a barmaid,

testified that she had known Heinen for many years. However, on the night in question she did not serve him. This witness further testified that she had conversed with the decedent only once that evening, and that conversation was very brief. Mrs. Mende recalled that Heinen was not looking well, but in her opinion, based on her experience and observation of the decedent that evening, Heinen was "definitely" not intoxicated.

The second witness, who testified by deposition, was Emil Borgen, who was a good friend of Heinen. Borgen arrived at defendant's liquor store at approximately 9:30. The decedent was drinking a beer when Borgen arrived. When Heinen left an hour later, he left about one-third of that same bottle of beer unfinished. During the approximately one hour that Borgen conversed with the decedent, he observed that Heinen's speech was no more slurred than normal.[1] Borgen further recalled that Heinen's manner of walking was normal, "[T]he same old waddle he always had," and that Heinen was not feeling too well. It was Borgen's opinion that the decedent was capable of driving when he left the bar.

The accident, in which plaintiffs were injured and Heinen was killed, occurred 15 to 20 minutes after Heinen left the bar. That evening, a sample of blood was extracted from the decedent and sent to the Minnesota Bureau of Criminal Apprehension for analysis. This analysis disclosed that Heinen's blood contained .28 percent of ethyl alcohol by weight.

Plaintiffs secured the deposition of a toxicologist[2] who testified that one whose blood contained in excess of .15 percent ethyl alcohol is intoxicated. This expert witness further testified that one whose blood contained .28 percent ethyl alcohol would be "extremely impaired in his ability to perform or his ability to drive," and once blood-alcohol exceeds .15 percent, then symptoms of intoxication would be apparent to one who is specifically looking for said symptoms. This expert witness, on cross-exami-

---

[1] There is evidence that Heinen spoke with a German accent.

[2] A specialist on the effects of drugs and poisons on the body.

nation, did admit that an experienced drinker can mask symptoms of intoxication, as compared to a less experienced drinker.

Following closing arguments and final jury instructions, the case was submitted to the jury, which returned special verdicts finding, in part, as follows:

(1) Defendant did *not* illegally sell intoxicating liquor to George Heinen on May 30, 1970.

(2) The condition of George Heinen was not such that an employee of the Warroad Liquor Store either knew or should have known that George Heinen was intoxicated.

Judgment for defendant was ordered. Plaintiffs moved for judgment n. o. v., or, alternatively, for a new trial, advancing the same arguments that constitute the issues in this appeal. The court denied that motion and plaintiffs now appeal from said order of denial.

Plaintiffs cite as error the following:

(1) That the trial court erred in not allowing them to submit evidence to the jury of a previous settlement with decedent's estate in the amount of $10,000.

(2) That the court erred in its instructions to the jury on the duty of defendant to observe decedent for possible intoxication.

(3) That the evidence does not support the verdict.

Plaintiffs, prior to the trial on this case, had reached settlement with the decedent's estate for $10,000 in damages. They sought at the trial to introduce this settlement for the purpose of allowing the jury to be informed that plaintiffs were entitled to additional damages under the Dram Shop Act if they had not been fully compensated by the earlier settlement.

We find that the trial court was correct in its reasoning that if a prior recovery has been had, the deduction therefor should be made by the court after rendition of the verdict in the Dram Shop Act case, and that the plaintiffs were not prejudiced in any way by the failure of the court to allow such evidence.

■ In its instruction to the jury on the question of the duty to observe for possible intoxication, the court said:

"The third question reads as follows: 'Was the condition of George Heinen such that an employee of the Warroad Liquor Store either knew, or should have known that George Heinen was intoxicated?' A sale, gift or furnishing of intoxicating liquor to a person who is not in fact intoxicated is not an illegal sale. *It was not the duty of the employee of the defendant to make specific inquiry to determine the matter of intoxication.* In this case, however, it was the duty of the employee or employees of the Defendant Warroad Municipal Liquor Store *to make such observations of the appearance and conduct of George Heinen as might be expected in the exercise of reasonable care* to determine whether he had lost control of his physical and mental faculties to any extent as a result of prior consumption of liquor.

"George Heinen would be intoxicated within the meaning of the statute, the provisions of which I read to you, if his intoxication was or should have been *reasonably evident* or apparent to any employee of the Defendant Warroad Municipal Liquor Store after having made the observations which it was the duty of such an employee to make.

"If you find, under the evidence and instructions of the court, that any employee of the Warroad Liquor Store either knew or should have known that George Heinen was intoxicated you will answer the question 'yes', and if you do not so find you will answer it 'no'." (Italics supplied.)

This instruction is confusing, if not perverse. This court has held in the case of Mjos v. Village of Howard Lake, 287 Minn. 427, 178 N. W. 2d 862 (1970), that the standard or duty of observation required of a liquor supplier to detect intoxication in prospective customers is as follows:

"* * * However, the change of the statutory standard for prohibition of further sales of intoxicating liquor does require that the seller take such *affirmative steps* as a reasonably pru-

dent man would regard as adequate to ascertain whether the conduct of the prospective purchaser manifests such loss of control of actions or motions as would make it illegal to furnish him more liquor. This may require the supplier of liquor to engage the prospective purchaser in conversation, to note specifically the details of the purchaser's physical appearance, to observe the purchaser's conduct during the course of his drinking at the supplier's establishment, or to scrutinize the actions of the prospective customer in other ways by which the supplier may detect intoxication which is observable even though not obvious." (Italics supplied.) 287 Minn. 435, 178 N. W. 2d 868.

See, also, Kluger v. Gallett, 288 Minn. 11, 178 N. W. 2d 900 (1970).

The above-quoted guidelines have been expressly relied on in Cameron v. City of Fridley, 293 Minn. 110, 197 N. W. 2d 233 (1972),[3] where this court ordered a new trial on grounds that the trial court failed to instruct the jury in accordance with the Mjos directives. In so holding, this court stated:

"It is apparent that the court neglected to explain to the jury, as plaintiffs requested, that the duty of reasonable care required the liquor seller to make an *affirmative* effort of observation to note signs of intoxication *which are not readily* detectable by ordinary observation." (Italics supplied.) 293 Minn. 115, 197 N. W. 2d 236.

Not only did the instructions of the court in this case not include a statement that defendant's employees had a duty to make an affirmative effort to observe, but expressly stated it was not the duty of the defendant's employees to make specific inquiry as to Heinen's intoxication.

Defendant contends the instruction given was in conformity

---

[3] The standard set forth in Mjos v. Village of Howard Lake, 287 Minn. 427, 178 N. W. 2d 862 (1970), has also been applied in the recent case of Martinson v. Monticello Municipal Liquors, 297 Minn. 48, 209 N. W. 2d 902 (1973).

with the suggested jury instruction, 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2 ed.) JIG II, 454.1 G.S., which provides "that no intoxicating liquors shall be (sold) * * * to any person who at the time is observably intoxicated." However, this same provision further states that, "[a] person is observably intoxicated if his intoxication is or should be *discoverable* by a reasonably *active* observation of his appearance, breath, speech, motions and actions. One who (sells) * * * intoxicating liquors has the *affirmative duty* to observe his (patrons) * * * *carefully and actively.*" (Italics supplied.) Comparison of the quoted JIG instruction and that submitted to the jury in this case shows that the instruction actually given fell far short of the standards contained in the recommended instruction.

We do not hold that a seller of intoxicating liquor must specifically ask a patron whether or not he is intoxicated, since such a question might be meaningless, but we do hold that it may be necessary for such seller to engage the patron in conversation to determine the matter of intoxication, and that this was such an instance where defendant was required to do so.

The record shows that in chambers the court indicated it was going to give the instruction in the Mjos case. If it had done so, no problem would have arisen, but the fact is that the court did not give the instruction approved in the Mjos case, but on the contrary apparently gave the instructions requested by defense counsel over the objections of plaintiffs' counsel. The damage was all the more obvious inasmuch as plaintiffs' counsel in his closing argument had told the jury that the court would instruct it that the seller of intoxicating liquor has the "duty to make specific inquiry of these people and to find out whether he is intoxicated and whether he should be furnished any more liquor and we haven't got that here."

The trial court, in its memorandum accompanying its order denying the new trial, indicated that considerable discussion took place in chambers wherein the defendant apparently requested

the instruction that was given with respect to its not being necessary to make inquiry, with the plaintiffs' attorney requesting the instruction in the Mjos case. However, much of this discussion is off the record. The record does show that plaintiffs' counsel did object to any instruction other than the Mjos case instruction.

Therefore, we do not find that plaintiffs' counsel waived objection to or approved of the instruction as given. While it is true that he did not object to the instruction in open court once it had been given, this would seem to be unnecessary inasmuch as he did object to the instruction in chambers in so far as the record contains that discussion.

Since a new trial is required, we need not decide the question of whether the evidence supports the jury verdict that the employees of defendant neither knew nor should have known that decedent was intoxicated. However, we hold that the plaintiffs establish a strong prima facie case of intoxication upon the admission into evidence of the blood test of the decedent showing a blood-alcohol content of .28 by weight.

We do not hold that a blood test establishes intoxication as a matter of law in a given case. A stronger argument could be made for such a holding if the blood test had been taken in the presence of representatives of the decedent, or their attorney, and with both sides having medical personnel present to agree on the controls for the taking. But we are not prepared to go so far as to hold a blood test taken solely by the state, or its representatives, and under its control should be binding on one alleged to be intoxicated.

However, in this case there was in addition to the blood test strong independent evidence of intoxication. The record shows that the decedent was a heavy drinker, was known to defendant's employees, and that he had been in the place of business of the defendant for at least 5½ hours prior to the accident. There was evidence of disorientation on the part of the decedent in going outside at one time with his friend and then returning.

There were the facts surrounding the accident itself which gave strong indication of intoxication. All these factors lead us to the conclusion that the defendant had a duty to affirmatively check the decedent's condition, and there is no evidence that it did so, which again points up the importance of the court's instructions in this case.

Reversed and remanded for a new trial.

PETERSON, JUSTICE (dissenting).

I dissent, with some reluctance, for as a juror I might have answered the critical interrogatory differently. However, I do not agree that the interrogatory or the instructions under which it was submitted were in error. We held otherwise in Kluger v. Gallett, 288 Minn. 11, 13, 178 N. W. 2d 900, 902 (1970). It is my understanding, moreover, that plaintiffs withdrew their request that an instruction be given in the language of Mjos v. Village of Howard Lake, 287 Minn. 427, 178 N. W. 2d 862 (1970).