**Rai-Anne May SEELEY et al., by Theresa Seeley, their mother and natural guardian, and Theresa Seeley, Individually, Appellants,**

**v.**

**Anna I. SOBCZAK and Elwood B. Lee, d.b.a. Eagle Tavern, et al., Respondents.**

No. 48937.

Supreme Court of Minnesota.

June 15, 1979.

STEPHEN L. MAXWELL, Justice.*

Plaintiffs claim that defendants sold intoxicating liquor to plaintiffs' decedent when he was obviously intoxicated, in violation of the Civil Damage Act. The jury returned a verdict for defendants, and plaintiffs appeal, asking this court to hold that the decedent, whose blood alcohol content at the time of death was .269, was obviously intoxicated as a matter of law. We affirm.

Plaintiffs are the wife and three minor children of decedent, Douglas Seeley. Defendants are the Eagle Tavern, its owners and operators, and its insurer.

Douglas Seeley arrived at the Eagle Tavern about 4:45 p. m. on January 23, 1975. He remained there for approximately 6 hours drinking beer and blackberry brandy alone and at times with various friends and relatives.

Shortly before 11:00 p. m., Seeley left the tavern to drive home. When he was about 5 blocks from the tavern, Seeley apparently lost control of his truck while attempting to turn onto a freeway ramp. Seeley's body was found outside his vehicle.

Seeley's body was taken to St. Luke's Hospital in Duluth, where an autopsy was performed. His blood alcohol concentration was determined to be .269 grams percent.

At trial, one of Seeley's drinking companions of January 23 testified that Seeley was drunk that evening. Another companion, who was only at the tavern with Seeley about 45 minutes on January 23, testified that when that particular group got together they always got drunk, and that the bartender at the Eagle Tavern would continue to serve them liquor. Seeley's wife and daughter, who had spoken with Seeley by telephone during the evening of January 23 while he was at the Eagle Tavern, testified that Seeley sounded drunk when he spoke with them.

Hunt & Arnold and Jerome G. Arnold, Duluth, for appellants.

Hanft, Fride, O'Brien & Harries, Gaylord W. Swelbar, and Raymond L. Erickson, Duluth, for respondents.

Heard before ROGOSHESKE, YETKA, and MAXWELL, JJ., and considered and decided by the court en banc.

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.

Two experts, a pathologist and a toxicologist testifying on behalf of plaintiffs, indicated that Seeley must have consumed approximately 18 drinks during the time he was at the Eagle Tavern in order to reach a blood alcohol level of .269.[1] They further testified that, although the more experienced drinker is better able to mask the symptoms of alcohol, anyone with a blood alcohol content in excess of .2 would exhibit signs of intoxication to a reasonable person.

Five witnesses who testified on behalf of defendants, however, stated that Seeley was not obviously intoxicated on the evening he died. Two of these witnesses had been drinking with Seeley on that evening, two were employees of the tavern, and one was a former or off-duty employee who was assisting the cocktail waitress for part of the evening. Each of these witnesses testified that Seeley, who was a heavy drinker, was quiet on January 23, and that he was not staggering, boisterous, or slurring his words.

The jury in answering the special interrogatories found that the Eagle Tavern did not furnish Douglas Seeley liquor after he was obviously intoxicated.

Two issues are before the court on appeal: (1) Did Douglas Seeley's blood-alcohol content of .269 percent by weight establish that he was obviously intoxicated as a matter of law? (2) Was the jury's decision contrary to the weight of the evidence?

The Civil Damage Act, Minn.St.1974, § 340.95, under which plaintiffs seek relief provides in pertinent part:

"Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; * * *."

1. Plaintiffs contend that Douglas Seeley's .269 percent blood alcohol content as corroborated by other evidence of (a) the state's policy to curb abuse of alcohol and to suppress illegal sales of liquor, (b) the abuse of alcohol by motor vehicle drivers, (c) the integrity of the blood sample and the accuracy of its analysis, (d) the proximity of the accident to Eagle Tavern, (e) the circumstances of the accident itself, (f) the custom and habit of the person and of his drinking, (g) the custom and habit of the liquor vendor, and (h) the general knowledge and experience of our society of the relation of signs of intoxication to quantity of alcohol ingested over a certain period of time must establish as a matter of law that he was furnished liquor by defendants when he was "obviously intoxicated" within the meaning of Minn.St.1974, § 340.14, subd. 1a, which reads:

"No intoxicating liquor shall be sold, furnished, or delivered for any purpose to any minor or to any person *obviously* intoxicated or to any of the persons to whom sale is prohibited by statute." (Italics supplied.)

Plaintiffs' position is unfounded. In *Strand v. Village of Watson*, 245 Minn. 414, 72 N.W.2d 609 (1955), addressing whether plaintiff was required to prove that the driver (urinalysis showed .27 percent alcohol by weight) who caused plaintiff's injury was *obviously* intoxicated, as provided by § 340.14, or was merely required to prove that the driver was intoxicated, as provided by the village ordinance, this court held that the language of § 340.14 was controlling, and stated:

"Where the legislature has created a right to a cause of action which did not exist at common law and has provided the yardstick by which that right should be measured, recovery may not be had by the application of some standard less than that prescribed by the legislature. * *

* * * * * *

"* * * [T]here is a manifest difference between the term 'under the influence of intoxicating liquor' (§ 169.12), as

---

1. A "drink" as used here means one ounce of 80-proof liquor or twelve ounces of strong beer.

used in our traffic laws, and the term 'obviously intoxicated,' as used in § 340.-14. In the former case it may well be that the results of a blood test or urinalysis alone may be sufficient to establish a violation of the law. In the latter case, while a blood test or urinalysis may in a proper case be admitted to assist the trier of fact in determining whether the buyer had reached such a state of intoxication that the seller should have known that he was intoxicated, it does not, standing alone, have the probative force or value which it has in a case involving a violation of our traffic laws. The reason for this distinction is obvious. Where a person has partaken of intoxicating liquor and is driving an automobile, he himself should know what his state of intoxication is. In the case of a violation of § 340.14, the seller must determine from what he observes whether the buyer has reached a point of saturation where it would be illegal to sell him more liquor. It can hardly be supposed that the seller of intoxicating liquor must subject a buyer to a blood test or urinalysis between each drink or sell at his peril if there are no signs of intoxication which should reasonably lead him to conclude that the time has come to refuse to sell more liquor. To give the statute any other meaning would render the word 'obviously' in § 340.14 meaningless." 245 Minn. 421, 72 N.W.2d 615.

Plaintiffs now urge this court to "answer affirmatively the question left undecided" in *Jaros v. Warroad Municipal Liquor Store*, 303 Minn. 289, 227 N.W.2d 376 (1975), where we held that the admission into evidence of a blood test demonstrating that the decedent's blood-alcohol content was .28 percent by weight established a strong prima facie case of intoxication, but expressly declined to hold that a blood test establishes intoxication as a matter of law. At the time the *Jaros* cause of action arose, however, the statute made no reference to a person *obviously* intoxicated. The word "obviously" was reintroduced into Minn.St. 340.14, subd. 1, by L.1971, c. 264. Thus any question unanswered by Jaros is not the same question raised by this appeal.

The Civil Damage Act is a creation of statute and therefore cannot be expanded beyond its explicit terms by judicial construction. *Fitzer v. Bloom*, 253 N.W.2d 395 (Minn.1977). Holding, as plaintiffs urge, that a given blood-alcohol content may establish as a matter of law that a person is obviously intoxicated would render meaningless the word "obviously" in § 340.14 and would significantly increase the duty imposed on those furnishing intoxicating liquor. See, *Mjos v. Village of Howard Lake*, 287 Minn. 427, 178 N.W.2d 862 (1970). If desirable, such an expansion of the liability imposed by the act should come from the legislature, not from this court.

The issue whether the verdict for defendant was contrary to the weight of the evidence must be reviewed on appeal in the light most favorable to the prevailing party. *Ruskamp v. Ferknes*, 261 N.W.2d 612 (Minn.1978). As set out more fully above, five witnesses, including Seeley's drinking companions and the employees of the tavern, testified that it was not apparent that Seeley was intoxicated on the evening he died. On the other hand, decedent's wife and daughter testified that he sounded intoxicated when they talked to him that evening over the telephone. Although plaintiff did introduce expert testimony to the effect that anyone whose blood-alcohol content exceeds .2 percent would exhibit symptoms of intoxication to a reasonable person, such expert testimony need not be considered conclusive by the jury, nor must it be given greater weight than any other evidence presented. See, *Berg v. Ullevig*, 244 Minn. 390, 399, 70 N.W.2d 133, 139 (1955).

Based on the record before us, the evidence does sustain the verdict for defendant.

Affirmed.

WAHL, J., took no part in the consideration or decision of this case.

OTIS, Justice (concurring specially).

By affirming we are not to be understood as holding that liability on a dram shop can

never be imposed merely because the patron involved was not "obviously intoxicated." There may be circumstances where employees of a dram shop are charged with notice of the patron's intoxicated condition, regardless of his appearance, if they have furnished him with such quantities of liquor on the premises that he could not possibly avoid being intoxicated.