**Vego Jon LARSON, Appellant,**

v.

**Dominic CARCHEDI, et al., Chmielewski, Inc., Howard Johnson Company, Respondents,**

**Club Domino, Inc., Defendant,**

**Godfather's Pizza of Minnesota, Lloyd Kenneth Geillinger, Respondents.**

No. CX–87–1650.

Court of Appeals of Minnesota.

·Feb. 16, 1988.

Thomas P. Knapp, Hughes, Thoreen & Sullivan, St. Cloud, for Vego Jon Larson.

Michael K. O'Tool, Fletcher & O'Tool, St. Cloud, for Dominic Carchedi, et al.

Robert L. Collins, George Flynn, Faegre & Benson, Minneapolis, for Chmielewski, Inc.

Michael S. Kreidler, Lasley, Gaughan, Stich & Angell, Minneapolis, for Howard Johnson Company.

Debra Ellis, Thomson, Hawkins & Ellis, St. Paul, for Club Domino, Inc.

Barry G. Vermeer, Gislason, Dosland, Hunter & Malecki, Minneapolis, for Godfather's Pizza of Minnesota.

John Quinlivan, Steven R. Schwegman, Quinlivan, Sherwood, Spellacy & Tarvestad, St. Cloud, for Lloyd Kenneth Geillinger.

Heard, considered and decided by FOLEY, P.J., and SCHUMACHER and STONE,* JJ.

## OPINION

SCHUMACHER, Judge.

Vego Jon Larson appeals a summary judgment against him in a tort action brought under the Minnesota Liquor Liability Act, or "Dram Shop Act." He maintains that sufficient circumstantial evidence exists to establish that Lloyd Geillinger was obviously intoxicated within the meaning of the statute when he was served liquor at the defending establishments.

## FACTS

Sometime around noon on November 19, 1980, Lloyd Kenneth Geillinger entered a back office at Godfather's Pizza and commenced drinking "whiskey cokes" with assistant manager, Charlie Fritz. Godfather's is licensed to sell and serve 3.2 beer, but not hard liquor. The bottle, belonging to Fritz, was obtained from the restaurant's cooler. During the next two hours Geillinger consumed approximately five to

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ten whiskey cokes, each containing four or five one-ounce shots of whiskey. In addition the two shared two marijuana cigarettes, and an unknown quantity of amphetamines. Appellant's toxicologist will testify that Geillinger's blood alcohol content would have been approximately .30 at the time he left Godfather's.

Geillinger arrived at the Ground Round at approximately 3:00 p.m. where he drank a beer and a shot of Schnapps. He then proceeded to the Office Bar, where he consumed two brandy-sevens. Later he had a beer at Carchedi's Bar, left and subsequently returned, consuming two more drinks. At 11:25 p.m., he arrived at appellant's apartment where he spoke with appellant's girlfriend over the intercom. She believed him to be very intoxicated at that time.

Geillinger arrived at the Club Domino where he bought a beer. As he proceeded to the game room, he saw his friend and drinking buddy, appellant Vego Jon Larson. At approximately 11:30, he approached appellant and jokingly placed a handgun to his back where it accidentally discharged.

Geillinger helped appellant to a car and drove him to the hospital at speeds up to 80 m.p.h. His "suicidal" driving (passing on the right, disobeying traffic signs) caught the attention of a St. Cloud police officer who arrested Geillinger at the hospital for DWI. A blood sample taken at 12:40 a.m. showed a blood alcohol content of .17.

From 11:45 p.m. to 1:00 a.m. four police officers observed Geillinger to be obviously intoxicated. Geillinger admitted to being very drunk in a written statement made at 8:00 a.m. on November 20, 1980 and to being "high" from the time he left Godfather's in a deposition taken on July 24, 1986.

Failing to find that Geillinger was "obviously intoxicated," the trial court granted summary judgment in favor of all defendants except Godfather's Pizza, pending further discovery.

Vego Jon Larson appeals the summary judgment maintaining that sufficient circumstantial evidence existed to establish a genuine issue of material fact as to whether Lloyd Geillinger was obviously intoxicated when he was served liquor at the defending establishments.

## ISSUE

Whether the trial court erred in granting summary judgment for respondents?

## ANALYSIS

Summary judgment will be granted where "there is no genuine issue as to any material fact and * * * either party is entitled to judgment as a matter of law." Minn.R.Civ.P. 56.03. Here the trial court's decision was based upon appellant's inability to prove that Lloyd Geillinger was "obviously intoxicated" within the meaning of the Dram Shop Act. Minn.Stat. § 340.14, subd. 1 and § 340.95 (1980), now § 340A.504, subd. 3(b) and § 340A.801 (1986 Supp.1987).

Minn.Stat. § 340.14, subd. 1 provides:

No intoxicating liquor shall be sold, furnished or delivered for any purpose to any minor or to any person obviously intoxicated or to any of the persons to whom sale is prohibited by statute.

And Minn.Stat. § 340.95 provides a remedy for such sales:

Every * * * person who is injured * * * by the intoxication of any person, has a right of action * * * against any person who, by illegally selling or bartering intoxicating liquors, caused the intoxication of such person, for all damages sustained * * *.

■ While a court may properly consider blood alcohol levels, blood alcohol alone is insufficient to establish obvious intoxication. *Strand v. Village of Watson*, 245 Minn. 414, 422, 72 N.W.2d 609, 615 (1955).

■ Direct evidence is not essential, and intoxication sufficient to constitute a violation may be established by circumstantial evidence which reasonably supports a jury verdict on the ultimate question. *Id.* 72 N.W.2d at 616. The Minnesota Supreme Court has held that a blood alcohol content of .26 with expert testimony as to the overt

symptoms one could expect a person to exhibit at such a level were sufficient to create a jury question, even in the absence of direct testimony of obvious manifestations of intoxication. *Hamilton v. Killian*, 296 Minn. 256, 258–259, 207 N.W.2d 703, 705 (1973). In similar cases, the court has found a jury question where the allegedly intoxicated person (AIP) admitted to drinking heavily, his blood alcohol was .23 at the time of the accident, he was observed driving in a reckless manner, and he appeared obviously intoxicated to the arresting officer. *Johnson v. Moberg*, 334 N.W.2d 411, 413–14 (Minn.1983). In *Jaros v. Warroad Municipal Liquor Store*, 303 Minn. 289, 296–297, 227 N.W.2d 376, 381 (1975), the court found a blood alcohol content of .28 after five and one-half hours of drinking, and evidence of disorientation sufficient to justify submitting the case to a jury.

■ Here there is a considerable amount of circumstantial evidence as to Geillinger's condition. By the time Geillinger left Godfather's he had consumed 20–50 shots of whiskey and an undetermined amount of illegal drugs. Geillinger testified that he was high at that time and remained so throughout the rest of that day. His inability to remember substantiates that claim. Additionally, plaintiff's expert would testify at trial that Geillinger's blood alcohol level was .30 at that point and that there would be overt symptoms of intoxication (staggering, slurred speech, erratic eye movements, boisterous behavior) even in an experienced drinker at a blood alcohol level of .15 or .20. The expert would further testify that an AIP would be approaching the point of stupor at a level of .25.[1]

Geillinger next appeared at the Ground Round where he consumed two drinks. The time was approximately 3:00 p.m. Based upon the testimony above, a jury could reasonably have concluded that Geillinger was still obviously intoxicated when he ordered, received and consumed the drinks at the Ground Round. He then pro-

ceeded to the Office Bar where he had two more drinks. Once again his blood alcohol prior to his visit, coupled with his testimony as to his alcohol consumption at the Ground Round, his inability to remember, and the short period of time between establishments would provide sufficient basis for submitting the issue to the jury.

Dominic Carchedi admits that Geillinger was at Carchedi's Bar at approximately 7:00 p.m. and that he served him two drinks for which Geillinger paid cash during the hour or so Geillinger was in the bar. Geillinger recalls being at Carchedi's Bar twice that night and his bank records establish that he wrote a check for cash there corroborating Geillinger's version of the facts. A jury could reasonably infer that Geillinger was "obviously intoxicated" based upon the evidence concerning his prior conduct that night, the toxicologist's testimony that Geillinger's blood alcohol was still approximately .20—a level at which most people lose consciousness, Geillinger's check for cash written at Carchedi's was made out for "cach," in almost illegible handwriting, Geillinger's loss of memory and his subsequent visit to plaintiff's apartment at 11:25 p.m. which convinced plaintiff's girlfriend that he was clearly intoxicated.

The girlfriend's testimony and the testimony of the arresting officers raise a factual question as to whether Geillinger was obviously intoxicated when he was served at Club Domino. Whether or not he consumed any alcohol at that establishment is a more difficult question, but still one for a jury to decide.

Geillinger's "suicidal" drive to the hospital, his inability to stand, talk clearly, or focus indicated to the officers who observed him that he was very intoxicated. When Geillinger's blood alcohol was finally tested at 12:40 a.m., at least one hour after his last drink and perhaps much longer, it was .17. Plaintiff's expert would testify that his blood alcohol was .30 at 2:00 p.m.

1. Plaintiff's toxicologist did not submit an affidavit to the court, but plaintiff's attorney submitted an affidavit concerning the subject matter of the toxicologist's testimony and his conclusions. Respondents failed to object to the admission of that evidence, and the trial court considered the evidence in reaching its decision. By failing to object at the summary judgment hearing, respondents have waived their rights under Minn.R.Civ.P. 56.03 and 56.05.

and was approximately .20 all afternoon and evening. If Geillinger's behavior clearly indicated he was intoxicated when his blood alcohol was .17, and for several hours thereafter, then a jury could reasonably conclude that he was exhibiting similar behavior at each or any of the establishments at which he was served that afternoon or evening when his blood alcohol was between .20 and .30.

When viewed, as a whole, the evidence, both direct and circumstantial, creates a question of material fact for the jury. While this is technically and practically speaking a difficult case to prove, the fact that plaintiff may not prevail at trial is not grounds for denying him his day in court. *Larson v. Independent School District No. 314*, 312 Minn. 583, 586, 252 N.W.2d 128, 130 (1977). Where there are questions of material fact to be decided, a trial must be granted.

## DECISION

Reversed and remanded.